Anthony D. Prince (SBN # 202892)
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

Attorneys for Plaintiffs

# UNITED STATES COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO HOMELESS UNION, a local of the CALIFORNIA HOMELESS UNION/STATEWIDE ORGANIZING COUNCIL, on behalf of itself and those it represents; BETTY RIOS; DONTA WILLIAMS; FALISHA SCOTT and all those similarly situated,<br><br>  Plaintiffs<br><br>vs.<br><br>COUNTY OF SACRAMENTO, a political subdivision of the State of California; CITY OF SACRAMENTO, a municipal corporation; and DOES 1 – 100,<br><br>  Defendants. | Case No.:<br><br>*Ex Parte* EMERGENCY APPLICATION FOR MANDATORY INJUNCTION AND TEMPORARY RESTRAINING ORDER TO PREVENT LIFE-THREATENING HEAT-RELATED HARM TO MEMBERS OF THE SACRAMENTO HOMELESS COMMUNITY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CRYSTAL SANCHEZ; DECLARATION OF FLOJAUNE COFER, PhD, MPH; DECLARATION OF FALISHA SCOTT; DECLARTION OF ANTHONY D. PRINCE; [Proposed] ORDER |

## INTRODUCTION AND BACKGROUND

1. The first day of summer, Tuesday, June 21, 2022, brought triple-digit heat to the City and County of Sacramento. At noon, the temperature rose to 102 degrees Fahrenheit as 3,900 homeless human beings -the City's official estimate of the number of its unsheltered residents - were abandoned by City and County officials who refused to declare a local emergency, although under the criteria set forth by Government Code Section 8558 such a declaration was – and continues to be—clearly indicated. "Local emergency" is defined by Section 8558(c) as "the duly

proclaimed existence of conditions of disaster or **extreme peril** to the safety of persons and property within the territorial limits of a county, city and county, or city[.]" (Emphasis added.)

2. As set forth in the supporting declarations filed herewith, at peril that day and at the present as more triple-digit temperatures are forecasted this week and in the summer ahead, were members of the public who belong to a discrete and disfavored sub-population for whom "staying home" is not an option: the unhoused. As explained in detail in the supporting declaration of public health expert Flojaune Cofer, PhD, MPH, it is undisputed that exposure to extreme heat has a disproportionate and frequently deadly impact on the unsheltered.

3. Meanwhile, Sacramento City code enforcement officials and members of the police department's "Impact Team" continue to destroy dozens of existing homeless encampments while providing no alternative shelter. The majority of the visibly homeless reside in encampments shaded by freeway overpasses, trees and vegetation and which include homeless-built makeshift habitations with covers that offer some defense against extreme heat. Consequently, the City's eviction of the homeless from these locations onto the unprotected streets and sidewalks or into sweltering tents atop heat-absorbing asphalt surfaces "Safeground" parking lots, is affirmatively increasing the risk of harm to the unsheltered.

4. At the Miller Park "Safeground" encampment, established by the City of Sacramento last year, temperatures inside tents placed on an asphalt parking lot approached 120 degrees Fahrenheit, and residents were going for hours without water to drink or food to eat. (See Declarations of Falisha Scott, Crystal Sanchez and Flojaune Cofer) Only one City-operated cooling center with a maximum capacity of 50, was opened. For its part, the County announced the provision of only three cooling centers, none of which would be open and available to the homeless until 4:00 pm, hours after the hottest time of the day. (See Exhibits A and B to the Declaration of Anthony D. Prince)

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

Page | - 2 -

5. In this way, the City and the County, respectively, ignored and continue to ignore the command of Section 101450 of the California Health and Safety Code which states that "the governing body of a city **shall take measures necessary** to preserve and protect the public health" and Health and Safety Code Section 101025 which requires "[t]he board of supervisors of each county **shall take measures as may be necessary** to preserve and protect the public health in the unincorporated territory of the county[.]" California Health & Safety Code §§101450 and 101025, (Emphases and underscoring added.)

6. As the first day of summer came to an end and reports poured into the Sacramento Homeless Union of widespread heat-related suffering, plaintiffs' counsel provided Defendants with a set of measures the Union believes necessary to protect the homeless and which the Union believes Defendants are already under a statutory and constitutional duty to take.

7. On June 22, 2022, the County replied to plaintiffs and defended its decision not to declare a local emergency by falsely claiming that "[a]ccording to the National Weather Service, the type of heat the County is experiencing is moderate and can be considered to be normal climate conditions that occur seasonally." *See*, Declaration of Anthony D. Prince. In fact, on the same day, at 2:08 PDT, the National Weather Service office in Sacramento issued a "Urgent Weather Message" with a "Heat Advisory" for the entire Sacramento Valley that warned of "Hot temperatures with highs 100 to 108 in the Valley" and a "locally high heat risk." (See Declaration of Crystal Sanchez).

8. For its part, the City replied with a list of four cooling centers: one City-established cooling center with a maximum capacity of 50 and three which were unavailable until 4:00 pm, hours after the hottest part of the day. Defendant otherwise failed to address Plaintiffs' concerns while failing to dispute that the City was destroying homeless encampments and otherwise increasing the risk of unprotected exposure to the extreme temperatures. See Exhibit B to Declaration of Anthony D. Prince

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

9. The extreme heat events of the last three days are almost sure to reoccur over the course of the summer. "Odds For Record-Breaking Heat Events Have 'Doubled Or Tripled' Due To Climate Change, Experts Say," reported Sacramento's CBS 13, ten days before temperatures reached triple-digits on January 21. "Historically," it was reported, "the Sacramento region has experienced between two and six extreme heat days," according to Paul Ullrich, a Professor of Regional Climate Modeling at U.C. Davis. But, says Professor Ullrich, due to global warming, "that number is now closer to eight extreme heat days every year." See, Declaration of Flojaune Cofer, PhD, MPH.

10. In addition, a recent study entitled **"Extreme Heat and Social Vulnerability in Sacramento, CA"** in which the City of Sacramento was a participant and which can be found on the City's website admits "The population most vulnerable to high temperatures are the homeless, who are frequently chronically dehydrated and *have no respite from the heat.*" See, Declaration of Flojaune Cofer. Accordingly, given the expected extreme heat weather events to come, the admitted vulnerability of the unsheltered and the failure of Defendants to discharge their respective duties during this week's triple-digit heat wave, Plaintiffs herein seek a mandatory injunction and a temporary restraining order against the City and County of Sacramento.

**JURISDICTION AND VENUE**

11. This is an action for injunctive relief pursuant to 42 USC Section 1983 and F.R.Civ.P. 23(b)(2) based upon ongoing violations and the imminent harm to homeless residents of the City and County of Sacramento, California based upon the violation of rights secured to the Plaintiffs by the Eighth and Fourteenth Amendments to the Constitution of the United States Constitution, as well as Article I, Section 1 of the California State Constitution and pertinent portions of California's Health and Safety Code Sections 101025 and 101450 and California Government Code Section 8558(c). Jurisdiction exists based on 28 U.S.C. Section 1331 and 1343 in that this case is brought pursuant to 42 U.S.C. Section 1983 and raises questions of federal constitutional law under the

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

Eighth and Fourteenth Amendments. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. Sections 2201(a) and 2202.

## PARTIES

**Plaintiffs:**

12. Plaintiff **SACRAMENTO HOMELESS UNION** ("SHU", "Homeless Union" or "the Union") is an unincorporated association of homeless and housing-insecure families, individuals and advocates, and a member local of the California Homeless Union/Statewide Organizing Council, affiliated with the National Union of the Homeless. The Union's mission is to organize, represent and serve the Sacramento homeless community. The majority of its officers and members live in homeless encampments. In 2020, the Sacramento Homeless Union successfully sued the City of Sacramento during the pandemic and obtained a writ of mandate from the Sacramento Superior Court enjoining the clearing of homeless encampments. Later, Sacramento County officially designated officers of the Union as essential workers providing handwashing stations, hygiene products, food and water to the homeless.

13. The SHU has approximately 2,500 members including approximately 100 officers or "leads" in approximately 100 homeless encampments in the Sacramento area. Union members are directly impacted by extreme heat and have suffered heat stress, heat stroke, hyperthermia aggravation of existing underlying medical conditions risking irreversible physical harm and even death. Harm caused by Defendants' affirmative acts and omissions regarding extreme heat directly interferes with the Union's purpose and mission. The Union brings this suit on behalf of itself and on behalf of its members and other homeless residents of Sacramento.

14. Plaintiff **BETTY RIOS** is an unhoused member of the Sacramento Homeless Union who lost her hotel room when the City of Sacramento discontinued its participation in Project Roomkey. She was subsequently moved to the "Safeground" site at Miller Park but left after it became flooded. She is currently on the streets and at risk for injury due to exposure to extreme

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

heat. She does not have a car or other transportation and has received no assistance from the City or County to go to a cooling center or obtain alternative safe shelter.

15. Plaintiff **FALISHA SCOTT** is a current homeless resident of the City's "Safeground" tent encampment located on an asphalt parking lot in Miller Park. She is one of fifty residents of the encampment for whom no notice or transportation assistance is being provided to reach any of the handful of cooling centers that have been announced by the City and County. Temperatures inside the City-provided tents during the current heat wave have reached 120 degrees Fahrenheit and residents are being denied adequate water and food. See, Declaration of Falisha Scott.

16. Plaintiff **DONTA WILLIAMS** is an unhoused member of the Sacramento Homeless Union who lost his hotel room when the City of Sacramento discontinued its participation in Project Roomkey. He is currently on the streets and at risk for injury due to exposure to extreme heat. On a nearly daily basis, Mr. Williams has been "swept" by City police and code enforcement personnel. The physical act of having to gather his belongings and "move on" requires great exertion in the midst of high temperatures and aggravates existing underlying medical conditions. He does not have a car or other transportation and has received no assistance from the City or County to go to a cooling center or obtain alternative safe shelter.

**Defendants:**

17. Defendant **CITY OF SACRAMENTO** is a municipal corporation existing under the laws of the State of California with the capacity to sue and be sued.

18. Defendant **COUNTY OF SACRAMENTO** is a political subdivision of the State of California with the capacity to sue and be sued.

**MEMORANDUM OF POINTS AND AUTHORITIES**

19. Pursuant to Local Rule 65.1(a), plaintiffs respectfully move for a mandatory injunction and temporary restraining order against Defendants City of Sacramento, County of

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

Sacramento and Does 1 – 100. Plaintiffs seek an order requiring Defendants to dramatically increase the number of cooling stations and other locations where the region's thousands of unsheltered homeless can survive the deadly extreme heat currently in the Sacramento Valley and forecasted to return throughout the summer. At present, between the City and County, only four cooling centers have been announced, one of which has a maximum capacity of 50 and three of which don't even open their doors until 4:00 p.m., hours after the hottest part of the day.

20. Plaintiffs also seek an injunction against the ongoing destruction of existing homeless encampments and the "sweeping" of individuals from public spaces by code enforcement and city police who are, in turn, failing to provide immediately accessible indoor alternative accommodations as required under the Ninth Circuit's landmark decision in *Martin v. Boise*. In many cases, pushed out of areas where there is at least a modicum of shade and other types of cover from the sweltering heat, Defendants are placing the unsheltered homeless at a greater risk of harm on the unprotected streets, sidewalks and within "sanctioned" encampments such a the City's "Safeground" site where temperatures within city-provided tents placed on heat-absorbing asphalt remain dangerously high.

21. A TRO and mandatory injunction is necessary to prevent irreparable harm to homeless plaintiffs prior to this Court having an opportunity to make a decision on Plaintiffs' motion for a mandatory injunction. On June 21, 2022, prior to bringing this action, counsel for plaintiff Sacramento Homeless Union Anthony Prince contacted counsel for the City of Sacramento and Sacramento County urging an end to the sweeps and the opening of a sufficient number of cooling centers and other locations under City or County ownership or control to insure that the safety of the unhoused during the deadly extreme heat. However, as of this filing, neither entity has increased the number of cooling centers or taken steps to end the dismantling of relatively shaded existing encampments such as those near trees and other vegetation, under freeway overpasses or in which the homeless have constructed makeshift habitations that offer some protections from the

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

Page | - 7 -

burning sun. Instead, both the City and County defended the existing "services" as adequate, denied that a genuine local emergency exists and characterized weather that has included triple digit temperatures as "moderate." Accordingly, Plaintiffs respectfully requests that the Court grant its motion for relief as set forth in their proposed order, submitted herewith.

## STANDARD OF REVIEW

22. In deciding an application for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, courts in the Ninth Circuit look to the following factors: a) The movant has shown a likelihood of success on the merits; b) There is a likelihood that the movant will suffer irreparable harm in absence of a preliminary injunction; c) The balance of equities tips in the movant's favor; d) The injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

**Plaintiffs Are Likely to Succeed on the Merits; Alternatively, Under the Ninth Circuit's *Alliance For The Wild Rockies v. Cottrell*, Plaintiffs Raise "Serious Questions" Going to the Merits**

23. To determine whether to issue a TRO, the courts in the Ninth Circuit apply the same analysis used to evaluate a motion for preliminary injunction. *McCarthy v. Servis One, Inc.*, 2017 U.S. Dist. LEXIS 32622, at *9–10 (N.D. Cal. Mar. 7, 2017). A party seeking a preliminary injunction in the Ninth Circuit must meet one of two variants of the same standard. First, a party can show that he or she is likely to succeed on the merits, that he or she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his or her favor, and that an injunction is in the public interest. *Alliance For The Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

24. Alternatively, under the sliding scale variant of the standard, if a plaintiff can only show that there are ***"serious questions going to the merits"***—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips

sharply in the plaintiff's favor, and the other two factors are satisfied. *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). These two alternatives are at the ends of a single continuum rather than two separate tests. *Immigrant Assistant Project of Los Angeles County Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002).

25. Here, Plaintiff raise serious questions including: a) the failure of the City and County to declare a local emergency under the criteria set forth in Government Code 8558(c); b) whether by failing to do anything more than open a token handful of cooling centers Defendants disregarded an existing duty under California' Health and Safety Code Sections 101025 and 101450 instructing that cities and counties, "shall take measures necessary to preserve and protect the public health"; and, c) whether by breaking up encampments where a modicum of protection from the heat exists and placing persons in a "Safeground" camp where internal tent temperatures near 120 degrees Defendants affirmatively increased the risk of harm in violation of the 14th Amendment right to bodily integrity and Article I, Section 1 of the California Constitution which includes the pursuit and attainment of "safety" among other rights describes as "inalienable."

26. To sum up, Plaintiffs have met their burden of demonstrating either a "fair chance of success on the merits" or, alternatively and at the least, "questions **serious enough to require litigation**. *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009) (Emphasis added.)

**The Harm to Plaintiffs is Both Irreparable and Imminent**

27. To support injunctive relief, harm must not only be irreparable, it must be imminent; a threat of irreparable harm in the indefinite future is not enough. Rather, a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief. *Amylin Pharm., Inc. v. Eli Lilly & Co.*, 456 F. App'x 676, 679 (9th Cir. 2011).

28. To demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief, a plaintiff must proffer probative evidence that the threatened injury is imminent

and irreparable. *Rubin ex rel. NLRB v. Vista Del Sol Health Servs., Inc.*, 80 F. Supp. 3d 1058, 1100-01 (C.D. Cal. 2015).

29. Here, as set forth in the supporting declaration of public health expert Flojaune Cofer, PhD, MPH, the impact of exposure of unsheltered persons to extreme heat may include irreversible aggravation of underlying medical conditions, permanent damage to vital organs and even death. That these harms are not only imminent but actually occurring in real time is shown by the declaration of Homeless Union President Crystal Sanchez and "Safeground" camper Falisha Scott who describes exposure to extreme temperatures, lack of food and water and the failure of the City and County to facilitate transportation to any of the handful of four cooling centers, three of which have remained closed during the hottest part of the last three days.

30. "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Inland Steel Co. v. United States*, 306 U.S. 153, 156 (1939); *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940). In *Winter v. Natural Resources Defense Council, Inc.* 555 U.S. 7 the Court reiterated the general standard and held that a "mere possibility" of irreparable harm is insufficient to warrant a preliminary injunction. Here, the threatened injury is hardly speculative and far more than a "mere possibility." Accordingly, Plaintiffs have met this element of the test for preliminary injunction.

**The Balance of Interim Harms Tips Heavily in Plaintiffs' Favor and the Public Interest is Served by the Granting of Injunctive Relief**

31. The court must evaluate the interim harm the defendants are likely to sustain if the injunction is granted and compare it with the harm the plaintiff is likely to suffer if an injunction does not enter. *De Vico v. United States Bank*, 2012 U.S. Dist. LEXIS 155622, at *22 (C.D. Cal. Oct. 29, 2012).

32. The real issue is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied. *Scotts Co. v. United Indus. Corp.*, 315

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

F.3d 264, 284 (4th Cir. 2002). If a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then an injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)

33. Here, Defendant City of Sacramento, itself, has indicated the public interest in insuring protection for the homeless from extreme temperatures. On January 14, 2020, the City Council adopted Resolution No. 2020-0017 which noted at that time "2,800 persons within the city are experiencing unsheltered homelessness." "There is a significant threat to the health and safety of unsheltered persons in the number of people experiencing homelessness," continues the resolution. "These individuals lack adequate sanitary facilities and are at risk from theft, crime, ***and extreme weather conditions***. These conditions threaten the physical and mental health and safety of those experiencing homelessness. ***These conditions also result in a threat to the public health and well-being of the community.***" (Emphasis added.) See, Declaration of Crystal Sanchez.

34. In this case, whatever hardship to the City and County may arise in expanding the number of cooling centers, making already existing facilities, government owned or operated buildings, vacant office and residential units and other properties under Defendants' control immediately available to the unsheltered homeless, is far outweighed by the hardship to those at risk of great bodily harm by unsheltered exposure to extreme temperatures.

35. The public, which, of course, includes Sacramento's homeless residents, is served by measures that protect its most vulnerable members from harm from extreme weather conditions. It cannot be disputed that on city and county websites, in public pronouncements and in announcing the availability of cooling centers, although completely insufficient in number, Defendants have themselves conceded the public interest in avoiding extreme weather exposure. Thus, to the extent that the Court's intervention is necessary to insure the most vulnerable members of the community are included, the issuing of an injunction is very much in the public interest.

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

Page | - 11 -

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

State-Created Danger in Violation of Due Process Guarantee Under the U.S. Constitution
U.S. Const., Amend. XIV; 42 U.S.C. § 1983

36. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

37. Under the 14th Amendment to the U.S. Constitution, no state can "deprive any person of life, liberty or property without due process of law." This federal constitutional provision confers upon Plaintiffs a right to be free from a deprivation of their due process rights by Defendants.

38. Under 42 U.S.C. Section 1983, "[e]very person who, under color of any statute, regulation custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party inured in an action at law…"

39. As part of this right, Defendants are prohibited from affirmatively placing Plaintiffs in known or obvious danger under an objective deliberate indifference standard.

40. By "sweeping" existing homeless encampments where there is at least a modicum of protection from the extreme heat and thereby forcing those swept into the more dangerous circumstances of uncovered streets, sidewalks and triple-digit, unbearably hot "Safeground" encampments, while failing to open a sufficient number of cooling centers and other safe, air-conditioned locations, Defendants have affirmatively placed and continue to place Plaintiffs in known or obvious danger.

41. Accordingly, Defendants have subjected Plaintiffs to state-created danger in violation of the 14th Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

**SECOND CLAIM FOR RELIEF**

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

State-Created Danger in Violation of Due Process Guarantees Under the California Constitution
Cal.Const. Ar. I §7

42. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

43. Under Article I, Section 7 of the California Constitution "A persons may not be deprived of life, liberty or property without due process of law." This state constitutional provision confers upon Plaintiffs a right to be free from a deprivation of their due process rights by Defendants.

44. As part of this right, Defendants are prohibited from affirmatively placing Plaintiffs in known or obvious danger under an objective deliberate indifference standard.

45. By "sweeping" existing homeless encampments where there is at least a modicum of protection from the extreme heat and thereby forcing those swept into the more dangerous circumstances of uncovered streets, sidewalks and triple-digit, unbearably hot "Safeground" encampments, while failing to open a sufficient number of cooling centers and other safe, air-conditioned locations, Defendants have affirmatively placed and continue to place Plaintiffs in known or obvious danger.

### THIRD CLAIM FOR RELIEF

Violation of Article I, Section 1 of the California Constitution

46. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

47. Under Article I, Section 1 of the California Constitution, "All people are by nature free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing, and protecting property; and pursuing and obtaining safety, and happiness, and privacy."

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

Page | - 13 -

N/A

48. By "sweeping" existing homeless encampments where there is at least a modicum of protection from the extreme heat and thereby forcing those swept into the more dangerous circumstances of uncovered streets, sidewalks and triple-digit, unbearably hot "Safeground" encampments, while failing to open a sufficient number of cooling centers and other safe, air-conditioned locations, Defendants have affirmatively placed and continue to place Plaintiffs in known or obvious danger.

## FOURTH CLAIM FOR RELIEF

### (Against Defendant City of Sacramento)

Violation of California Health and Safety Code Section 101025

49. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

50. Under California Health and Safety Code Section 101025, "the governing body of a city shall take measures necessary to preserve and protect the public health."

51, By failing to declare a local emergency despite the existence of "extreme peril to the safety of persons," the criteria for a declaration of local emergency under Government Code Section 8558(c),; by continuing to conduct sweeps of homeless persons and destruction of existing encampments relatively protected from extreme heat, thereby pushing the "swept" into more exposed and therefore more dangerous circumstances; and by opening only one cooling center with a maximum occupancy of 50, in a City with an official 3,900 persons counted as unsheltered, with no effective notice to the homeless nor transportation provided to the one shelter; and by placing persons in "Safeground" sites in tents directly atop an asphalt parking lot in Miller Park where interior tent temperatures neared 120 degrees Fahrenheit and denying "Safeground" residents adequate food and water, Defendant City of Sacramento places plaintiffs and other homeless persons in conditions of known, obvious heat-related danger.

## FIFTH CLAIM FOR RELIEF

**(Against Defendant County of Sacramento)**

Violation of California Health and Safety Code Section 101405

52. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

53. California Health and Safety Code Section 101405 requires that "[t]he board of supervisors of each county shall take measures as may be necessary to preserve and protect the public health in the unincorporated territory of the county[.]"

54. By opening only three cooling centers, which during the week are not available to those seeking relief until 4:00 pm, well after the hottest part of the day, and by otherwise failing to declare a local emergency despite the existence of "extreme peril to the safety of persons," the criteria for a declaration of local emergency under Government Code Section 8558(c), Defendant County of Sacramento has failed to protect unsheltered residents of Sacramento County from the risks of exposure to extreme heat.

**PRAYER FOR RELIEF**

55. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein:

Plaintiffs respectfully request that this Court order the following:

1. Grant a mandatory injunction requiring Defendants to:

   a) Declare a local emergency pursuant to Govt. Code 8558(c) whenever temperatures reaching or exceeding 90 degrees Fahrenheit are forecasted.

   b) During said local emergencies, keep all designated cooling centers open on a 24-hour basis and increase the number of cooling centers to a total of at least twenty (20) located close to significant concentrations of unhoused persons and of sufficient maximum occupancy such that nobody is turned away for lack of space.

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

Page | - 15 -

c) During said local emergencies, assign, County and/or City personnel as needed, to go to all locations where homeless persons are found and, using public address equipment and other means of mass communication, inform unhoused persons where they should gather in order to be provided transportation to an appropriate cooling center.

d) While canvassing areas where unsheltered persons are found, provide cold, potable water to those who request it, in sufficient quantities to insure that they are fully hydrated for the duration of the local emergency.

e) Provide three nutritional meals per day, potable water and cold-storage facilities at all "Safeground" sites to insure that on days where the temperature is forecasted to be 90 degrees Fahrenheit or more, all residents are fully hydrated.

2. Grant a Temporary Restraining Order prohibiting the clearing of homeless encampments unless and until all those impacted by such actions are provided with non-congregant, accessible, safe, indoor accommodations pursuant to *Martin v. Boise*.

3. That the Court retain jurisdiction and exercise oversight as to Defendants' compliance with its Orders.

4. Any further relief this Court deems appropriate.

Dated: June 24, 2022

Respectfully Submitted,

__/s/ Anthony D. Prince_____

Anthony D. Prince,
General Counsel, California Homeless Union
Law Offices of Anthony D. Prince,
Attorneys for Plaintiffs

Page | - 16 -

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

# VERIFICATION

I, Crystal Rose Sanchez, in my official capacity as President of the Sacramento Homeless Union, lead organizational Plaintiff in the above-captioned action, declare the following:

The facts alleged in this Complaint and *Ex Parte* Application for a Temporary Restraining are true of my own knowledge, except those statements made upon information and belief and, as to such statements, I believe them to be true.

Sworn under penalty of perjury under the laws of the United States of America

Dated: June 23, 2022

Executed at Sacramento, California          ____/s/ Crystal Sanchez_____
President, Sacramento Homeless Union

*Plaintiffs' Ex Parte* Application for Mandatory Injunction and TRO.

Page | - 17 -