1
2
3
4

Anthony D. Prince (SBN # 202892)
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

5

Attorneys for Plaintiffs

**UNITED STATES COURT**

6

**EASTERN DISTRICT OF CALIFORNIA**

7

8
9
10
11

SACRAMENTO HOMELESS UNION, a
local of the CALIFORNIA HOMELESS
UNION/STATEWIDE ORGANIZING
COUNCIL, on behalf of itself and those it
represents; BETTY RIOS; DONTA
WILLIAMS; FALISHA SCOTT and all those
similarly situated,

12

                Plaintiffs

13

        vs.

14
15
16

COUNTY OF SACRAMENTO, a political
subdivision of the State of California; CITY
OF SACRAMENTO, a municipal corporation;
and DOES 1 – 100,

17
18

                Defendants.

_____

Case No.:  2:22-cv-01095-KJM-KJN

**PLAINTIFFS' MOTION TO
DISQUALIFY/RECUSE
CHIEF DISTRICT COURT JUDGE
KIMBERLY J. MUELLER**

Date: July 8, 2022
Time: 10:00 a.m.
Dept.:  Courtroom 3

U.S. Chief District Court Judge Kimberly J.
Mueller

19

20
21
22
23
24
25
26

        Section 455(a) of Title 28 of the United States Code requires a federal judge to "disqualify

himself in any proceeding in which his impartiality might reasonably be questioned." *Liteky v.

United States*, 510 U.S. 540, 541 (1994). Plaintiffs Sacramento Homeless Union, Betty Rios, Donta

Williams and Falisha Scott now, for the reasons set forth below, formally request the

disqualification of United States Chief District Court Judge Kimberly J. Mueller from the above-

captioned case.

27
28

1

2   **LEGAL STANDARD FOR DISQUALIFICATION**

3        Federal law requires a judge to "disqualify himself in any proceeding in which his

impartiality might reasonably be questioned." 28 U.S.C. §455(a). Because section 455(a) is

4                                                                                              Page |

intended to avoid even the appearance of partiality, (*Liljeberg.v. Health Services Acquisition Corp.,*                                                                    - 2 -

5   486 U.S. 847, 860 (1988)), it is not the reality of bias or prejudice, but rather the appearance of bias

6   or prejudice that matters. *Liteky v. United States*, 510 U.S. 540, 548 (1994). Thus, so long as a

7   judge's impartiality might reasonably be questioned, recusal is required "even though no actual

8   partiality exists…because the judge actually has no interest in the case or because the judge is pure

9   in heart and incorruptible." *Liljeberg*, 486 U.S. at 860.

10

11        The standard for assessing whether section 455(a) requires disqualification is thus an

12  objective one that "involves ascertaining whether a reasonable person with knowledge of all the

13  facts would conclude that the judge's impartiality might reasonably be questioned." *Preston v.*

14  *United States*, 923 F.2d 731, 734 (9th Cir. 1991), Case: 09-17195 12/09/2010. When the Court

15  analyzes the appropriateness of disqualification, the Court must be guided by the unique facts and

16  circumstances of the matter before it; the Court "must bear in mind that…outside observers are less

17  inclined to credit judges' impartiality and mental discipline than the judiciary itself will be; and, in

18  "a close case, the balance tips in favor of recusal." *United States v. Holland,* 519 F.3d 909, 912, 914

19  (9th Cir. 2008).

20

21        In this case, the facts would cause a reasonable person to conclude that Judge Mueller's

22  impartiality might reasonably be questioned. Moreover, it is not important that neither Judge

23  Mueller nor her husband Robert Slobe, nor the North Sacramento Land Company, hereafter

24  "NSLC" of which Mr. Slobe is president are not named parties in this case. Obviously, if that were

25  the case, there would be an obvious conflict of interest. But not being named is not the legal

26  equivalent of being saved from less obvious conflict. The named parties are not the deciding factor.

27

28

Plaintiffs' Motion for Disqualification

The Supreme Court has never limited recusal requirements to cases in which the judge's conflict was with the parties named in the suit. Rather the focus has consistently been on the question whether the relationship between the judge and an interested party was such as to present a risk that the judge's impartiality in the case at bar might reasonably be questioned by the public." *Preston*, supra, at 734.

Here, Defendants County of Sacramento and City of Sacramento have been named as targets and, in some cases, defendants in suits brought by the landowning corporation of which Judge Mueller's husband is president. Here, Judge Mueller shares a marital property interest with NSLC President Slobe in a part of Sacramento which is arguably "ground zero" in the conflict between the homeless on the one side, local government on another and property owners on a third "side." Plaintiff Sacramento Homeless Union has been and continues to be in thick of this conflict. Accordingly, the relationship between Judge Mueller and parties with an interest, although not named as defendants, Robert Slobe and the Northern Sacramento Land Company are such as to present a risk that this Court's impartiality might reasonably be questioned by the public.

Judge Mueller is married to and shares property interests with Robert Slobe, President of the North Sacramento Land Company. According to public records, Judge Mueller and her husband own at least four properties in or near the locations described above near the American River Parkway:  2121 Canterbury Road; 551 Southgate Road; 201 Lathrop Way; and 191 Lathrop Way.

Both in his individual capacity and as the CEO of NSLC, Mr. Slobe is now and has for nearly twenty years been a high-profile, outspoken, controversial, divisive and often vulgar leading proponent of eradicating homeless encampments in the Sacramento area, particularly those encampments at the American River Parkway area where he and Judge Mueller live and own property. The following are examples of public statements hostile to the homeless and advocates for the homeless that Mr. Slobe has made:

- In a story by Sacramento Bee reporter Mike McCarthy in 2003, Mr. Slobe describes homeless persons camping on the American River Parkway: "The worst thing about it all is that it is legally my responsibility to clean up after these cretins."

- In an article for the Sacramento News and Review in 2011 entitled "Sac homeless advocates have it wrong," Slobe wrote, "Bums burned the oldest walnut grove west of the Mississippi to the ground" and compared today's unhoused as being "akin to the county's own deformed thalidomide babies."

- In a story carried by the Sacramento Bee in 2012, citing to numerous emails sent by Mr. Slobe to prominent members of the community, Slobe is quoted describing Sister Libby Fernandez, "a nun who oversees the homeless services charity Loaves & Fishes" as a nut that has advocated bum camping in the Parkway for decades" and who displays photos of homeless "criminals" in her office "like trophies."

- Mr. Slobe is quoted in a November, 2012 Yahoo News story, describing a photograph he took at a food program for the unhoused on the American River Parkway camped under Highway 160: "Grainy, but about 100 ghouls feeding at 5pm today." The same article about Robert Slobe quotes Judge Mueller as saying "He [Slobe] accepts more responsibility than he should for saving North Sacramento," and telling the reporter that Slobe has 'a strong sense of right and wrong.'

- In a CBS News report of July, 2017 describing homeless camps by the American River Parkway: "Pornography, spent needles, human feces by the ton." (See, Declaration of Anthony D. Prince)

Of course, standing alone, Judge Mueller cannot and should not be tarred by the outrageous, false and highly prejudicial statements of her husband and Plaintiffs do not now assert that Judge Mueller shares these extreme views. Nevertheless, it is also true, as far as our research has shown, that Judge Mueller has never publicly disavowed or distanced herself from such comments. More important, and in any event, to the extent that she has a shared marital property interest with Mr. Slobe, those interests are implicated in the contested terrain between property and business owners in the North Sacramento area on the one hand and the homeless--including members of Plaintiff Sacramento Homeless Union-- who have been encamped and repeatedly swept from that area.

### THE NORTH SACRAMENTO LAND COMPANY AND
### ITS RELATIONSHIP WITH DEFENDANT CITY OF SACRAMENTO

Equally, if not more problematic, Judge Mueller's husband is the President of the North Sacramento Land Company, which owns scores and possibly hundreds of properties in the very same area where homeless encampments have proliferated and where Plaintiff Sacramento Homeless Union has resisted massive, sometimes violent "sweeps" of the unhoused. As recently as November, 2021, the organization of which Mr. Slobe is president, has been at the forefront of political pressure campaigns and lawsuits demanding that Sacramento officials intensify the eradication of homeless encampments.

In a letter dated November 23, 2021 addressed to Jack Greer, Vice President of the North Sacramento Land Company, attorneys for the law firm of Weintraub/Tobin, NSLC's counsel, wrote "[T]he City of Sacramento has abandoned the areas near and around Lathrop Drive and Commerce Circle, rendering the area a containment zone where the homeless are allowed to live free of the laws. This has resulted in waste, property damage, private and public nuisances, and even murder." The attorneys for NSLC go on to report "North Sacramento Land Company has made numerous requests to the City of Sacramento to rectify the issue, as the homeless are breaking a variety of laws, including illegally parking their vehicles, loitering, drug dealing, drug use, etc."

1    In turn, in a letter dated November 29, 2021, and addressed to "owners and tenants of

2  Johnston Industrial Park," NSLC Vice President Jack A. Greer wrote, "I know you are all very

3  aware of the illegal parking, camping and loitering in the park. We and others have tried in vain to

4  have the street people and homeless removed." The letter goes on to say, "I am sure that everyone is

5  sick and tired of the horrible and disgusting situation." NSLC's letter of November 29, 2022,

6  contains an express invitation to its land and property-owning recipients to become part of and to

7  help fund lawsuits to compel local authorities to eradicate homeless encampments: "We would now

8  like to follow the lead of Railroad Drive, less than a mile away [from Johnston Industrial Park] to

9  file a complaint against the City of Sacramento." The letter reports that "fees spent on [the] Railroad

10  Avenue lawsuit currently stand at $20,000. As a result, the streets are clear." [1]

11

12    Although it may appear at first blush that filing such suits show an interest adverse to the

13  City, in fact, as NSLC Vice-President Greer states, the case served as a justification for the City to

14  clear homeless persons, including members of the Homeless Union from the area. Thus, it appears

15  that convenient arrangements are being made that suggest a far more enmeshed and mutually

16  beneficial relationship between Mr. Slope's NSLC and the City of Sacramento than is evident on

17  the surface.

18

19    In any event, although Plaintiffs do not have evidence and do not here assert that Judge

20  Mueller is personally involved in the affairs of the North Sacramento Land Company, the fact

21  remains that the organization over which her husband presides and from which he derives material

22  and political benefits is, under the aegis of lawsuits against the City of Sacramento, is serving the

23  shared interest of the City and the NSLC in eradicating homeless encampments. Accordingly, under

24  the circumstances, Judge Mueller's impartiality "might reasonably be questioned."

25

26

27  _____

28  [1] The case, *1900 Railroad LLC v. City of Sacramento* Case No. 2:21-cv-01673 was originally assigned to Chief Judge
Mueller. However, on September 29, 2021, Judge Mueller recused herself pursuant to Section 455(a) of Title 28 of the
United States Code.

Plaintiffs' Motion for Disqualification

## JUDGE MUELLER'S RULING IN THE MAHONEY CASE

Finally, Plaintiffs are also concerned with the case of *Mahoney v. City of Sacramento*, 2:20-cv-00258-KJM-CKD, in which Judge Mueller denied a motion for a temporary restraining order filed by homeless persons after Sacramento Police removed a porta-potty that had been donated and placed in a 30-person homeless encampment. In that case homeless plaintiffs had raised issues of the constitutional right to bodily integrity impacted by the removal of the portable toilet where the nearest public facilities were over a mile away. Judge Mueller held, essentially, that no constitutional claim could be made out.

Plaintiffs in the instant case also raise serious substantive due process questions of bodily integrity, i.e., the risk of serious injury and death from unprotected exposure to extreme heat. Accordingly, Plaintiffs in the current case are concerned that Judge Mueller may similarly discount these risks and their legal significance as Plaintiffs believe the Court did in denying their motion for a temporary restraining order.

## CONCLUSION

Plaintiffs' decision to file this motion did not come easily. The Chief Judge is widely respected both for the position she occupies and her performance on the bench. Taken separately, the facts presented above might prove insufficient to warrant recusal and, again, Plaintiffs do not assert that the Court holds a personal bias against plaintiffs or the unhoused as a disfavored population. Nevertheless, under the legal standard discussed above, the combination of Judge Mueller's interests in marital property shared with the President of a major Sacramento landowning company whose material interests, or so he claims, are directly and negatively impacted by the homeless, thousands of which—including those camped in the North Sacramento area and along the American River Parkway—are represented by Plaintiff Sacramento Homeless Union combine here to form an appearance of, if not a fully formed bias such that Judge Mueller's impartiality might be reasonably be questioned.

Accordingly, for the reasons set forth herein and which may be argued at a hearing, should the Court convene one, Plaintiffs respectfully pray that the Court grant their motion for disqualification and that Judge Mueller recuses herself from this case.

Dated: July 6,  2022                              Respectfully Submitted,

__/s/ Anthony D. Prince_____

Anthony D. Prince,
General Counsel, California Homeless Union
Law Offices of Anthony D. Prince,
Attorneys for Plaintiffs