Anthony D. Prince (SBN # 202892)
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

Attorneys for Plaintiffs

**UNITED STATES COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SACRAMENTO HOMELESS UNION, a local of the CALIFORNIA HOMELESS UNION/STATEWIDE ORGANIZING COUNCIL, on behalf of itself and those it represents; BETTY RIOS; DONTA WILLIAMS; FALISHA SCOTT and all those similarly situated,<br><br>　　　　　Plaintiffs<br><br>　vs.<br><br>COUNTY OF SACRAMENTO, a political subdivision of the State of California; CITY OF SACRAMENTO, a municipal corporation; and DOES 1 – 100,<br><br>　　　　　Defendants. | Case No.:  2:22-cv-01095-KJM-KJN<br><br>**PLAINTIFFS' REPLY TO DEFENDANT COUNTY OF SACRAMENTO'S OPPOSITION TO PLAINTIFFS' MOTION FOR MANDATORY INJUNCTION**<br><br>Date:　　　July 8, 2022<br>Time:　　　10:00 a.m.<br>Dept.　　　Courtroom 3<br><br>U.S. Chief District Judge Kimberly J. Mueller |

**INTRODUCTION**

Although pitifully inadequate in number and unavailable during the hottest times of the day, by opening three cooling centers, Defendant County of Sacramento has not only failed to negate, but has conceded the peril faced by unhoused residents of Sacramento as the result of exposure to extreme temperatures. In its Opposition, the County admits that "twice in the month of June, 2022" it activated this handful of largely inaccessible cooling centers "despite the fact temperatures never reached Phase III" i.e., before an Extreme Heat Warning was issued by its Department of Human

Plaintiffs' Reply to Defendant County of Sacramento's Opposition to Complaint for Civil Rights

Assistance. Why? Because, as the County admits, "their population includes *unhoused individuals who are more vulnerable* to weather events." Defendant County of Sacramento's Opposition at P.3.(Emphasis added.) In so acting and in so stating, the County does not and cannot dispute that conditions of extreme peril exist for the homeless, even when temperatures may be below triple-digits and classified as "moderate" by the National Weather Service. What the County continues to deny, however, is that the number of cooling centers that were opened and the hours during which they were actually available was and remains completely inadequate. Indeed, days after Plaintiffs filed their motion, results of the 2022 Sacramento Point in Time ("PIT") Count were released showing, over the last three years, a whopping 67% increase in the number of visibly unsheltered persons in Sacramento County. The actual number had gone from 5, 570 to a staggering 9,278 men, women and children.

      The National Weather Service 14-day forecast for the Sacramento area released today, July 6, 2022, shows temperatures rising from the mid-eighties, to the high-eighties, into the nineties and by Sunday, July 10, into the three-digit range to a high on Monday, July 11 of 105 degrees Fahrenheit. For the following nine days, the temperature will remain at the mid-to-high nineties. As set forth in Plaintiffs' Motion, on the city streets and sidewalks and in the "Safeground" tents the temperatures will be anywhere from ten to thirty degrees higher on each and every one of those days. In other words, the dangers faced two weeks ago are now faced by almost twice as many homeless persons.

      The County relies on the NWS to argue that triple digit temperatures constitute "moderate" conditions but totally ignores NWS guidance as set forth in Exhibits in their own Declaration of Flynn-Lewis, as it relates to the most vulnerable population groups. In any event, to the extent that the County's defense is that it "is in compliance" with official, i.e. NWS standards it is well-settled that at common law, compliance with government regulations does not absolve an otherwise negligent entity from liability.  See, Restatement (Third) of Torts: Phys. & Emotional Harm §§13

Plaintiffs' Reply to Defendant County of Sacramento's Opposition to Complaint for Civil Rights

Page | - 2 -

The County argues that none of the "cooling centers" ever reached capacity. However, as their own declarations admit and as Plaintiffs point out in their Motion, not a single cooling center was available until well after the hottest time of the day. All three cooling centers are actually located in county welfare offices. As Crystal Sanchez sets forth in her Supplemental Declaration, security at these offices routinely chases away anyone who does not have official business at these locations. Even during last months extreme heat, the Union received reports and video recordings of security removing those who had come seeking shelter. Moreover, the County's opposition admits that to the extent "publicity" regarding cooling center availability and locations was limited to existing media outlets, which are largely unavailable to the vast majority of homeless persons. With few if any locations to charge cell phones, this last remaining avenue of communication was and is effectively closed off. Moreover, simply providing an announcement over social media—even if heard-- means nothing if someone doesn't have a charged cell phone from which to make a call for transportation. And to require someone to walk miles, carrying everything they own in the heat, to get to a cooling center with severely limited hours without additional risk to their safety and health from such extreme exertion would actually constitute a state-created danger. Nowhere in any of the County's supporting declarations are there figures or even anecdotal evidence of where County workers went to "notify" the homeless or how many persons were actually contacted and the County fails to provide a single declaration from a homeless person who was contacted and was provided transportation to a cooling center. Small wonder that the County's cooling centers "never reached capacity."

With regard to the "Safeground" tent encampment, the County shrugs off any responsibility since Safeground is City-operated. In so doing the County's opposition fails to counter any of Plaintiffs' evidence that conditions in the superheated tents were extreme and extremely dangerous and that the occupants *needed to be able to go <u>somewhere else</u>* to obtain relief. Of course, the City

Plaintiffs' Reply to Defendant County of Sacramento's Opposition to Complaint for Civil Rights

of Sacramento shares liability since it operates the Safeground, but that does not discharge the County's statutory duty to take all "necessary measures" required to protect public health, a duty that is not obviated by the negligence of the City. The County's argument is essentially, "why should we provide an ambulance if we are not the ones who caused the accident." Thus, Safeground residents suffer and will suffer the failures of the County to open sufficient numbers of cooling centers; to make a real effort to provide on-the-ground awareness of their location and the asserted availability of transportation.

With regard to the distribution of water, simple math reveals the inadequacy of the County's "efforts." To begin with, nowhere in its Opposition does the County dispute or provide an expert declaration to rebut the Supporting Declaration of Public Health expert Dr. Flojaune Cofer as to the amount of water needed in extreme heat conditions. Secondly, Emily Halcon's declaration, while describing the County's efforts to provide water, constitutes an admission of woeful inadequacy. Twenty-eight hundred gallons of water did not come close to the medical threshold for hydration for 5,500 officially designated unhoused persons, let alone the 9,700 unsheltered recorded by the latest point in time survey. Using the figure now conceded by the County, 2,800 gallons of water works out to two-tenths of a gallon per person, which works out to .001 of an 8 ounce glass of water per person. This is why we need a mandatory injunction; this is why despite its representations to the contrary, the County can't do it by itself and why other jurisdictions need to become involved, thereby satisfying what the County itself concedes is a requirement for the declaration of a local emergency.

Finally, the County's opposition asserts that since it is not conducting sweeps, it is therefore not liable for state-created danger. It is true that this portion of Plaintiffs' complaint and motion is primarily directed at the City of Sacramento, which has not filed an Opposition. Accordingly, this Reply is focused on Defendant County of Sacramento. Nevertheless, as discussed above in relation to the City-operated "Safeground" at Miller Park, the fact that the City and not the County is

conducting the sweeps of homeless persons and destruction of homeless encampments does not alter the fact that such sweeps—which the County does not dispute are occurring—result in the displacement and subjection to increased risk of harm of those so swept by way of increased unprotected exposure to extreme temperatures. Accordingly, with the ranks of the unsheltered now augmented in this way, the obligation of the County pursuant to the pertinent sections of the California Health and Safety and Government Codes discussed in Plaintiffs' main motion, to declare a local emergency and render the required measures necessary is increased, not diminished.

## CONCLUSION

The County has failed to show that its efforts are sufficient or that Plaintiffs have failed to show that the conditions for the declaration of a local emergency do not exist. The County cannot have it both ways: it cannot concede by word and action that temperatures certainly at but also below three digits put those most vulnerable at peril and then make a wholly inadequate, token and ineffective response. Accordingly, Plaintiffs believe that a mandatory injunction along the lines set forth in their Complaint and Motion should issue.

Dated: July 6, 2022                               Respectfully Submitted,

                                                  /s/Anthony D. Prince,

                                                  Attorney for Plaintiffs.

Plaintiffs' Reply to Defendant County of Sacramento's Opposition to Complaint for Civil Rights