Anthony D. Prince (SBN # 202892)
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

Attorneys for Plaintiffs

**UNITED STATES COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SACRAMENTO HOMELESS UNION, a local of the CALIFORNIA HOMELESS UNION/STATEWIDE ORGANIZING COUNCIL, on behalf of itself and those it represents; BETTY RIOS; DONTA WILLIAMS; FALISHA SCOTT and all those similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>COUNTY OF SACRAMENTO, a political subdivision of the State of California; CITY OF SACRAMENTO, a municipal corporation; and DOES 1 – 100,<br><br>Defendants. | Case No.: 2:22-cv-01095-KJM-KJN<br><br>**PLAINTIFFS' REPLY TO DEFENDANT CITY OF SACRAMENTO'S OPPOSITION TO PLAINTIFFS' MOTION FOR MANDATORY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATIONS (FILED SEPARATELY)**<br><br>U.S. District Judge Troy L. Nunley |

**INTRODUCTION**

In the last two weeks, neither the City nor County of Sacramento has extended the hours of the handful of cooling centers it has designated nor has either Defendant done anything different or additional by way of notifying the 9,700 unsheltered homeless of the existence or location or provided transportation to such facilities. Finally, no additional cooling centers were opened during this period, despite the fact that during this time period there were numerous days during which the temperatures reached the middle to high 90's and rose to triple digits.

Plaintiffs' Reply to Defendant City of Sacramento's Opposition to Plaintiffs Motion for Injunctive Relief

As discussed fully below, Defendants' adherence to a process expressly described as "experimental" by its creators has failed to protect those most vulnerable to extreme heat. Instead, Defendants are using the "National Weather Service Experimental Heat Index" too conceal and even justify their failure to implement their own [County Heat Guidelines]which includes utterly ignoring their self-proclaimed obligation to create and implement an extreme heat protection plan specifically targeted to the homeless.

In the same period, as fully discussed below, the City continued to conduct sweeps of homeless encampment and individuals in violation of a 2020 Superior Court Writ of Mandate issued at the height of the COVID-19 pandemic which required the City "to refrain from clearing homeless persons or encampments." The Order for Writ of Mandate remains in effect as infections from new and highly-transmissible variants soar in Sacramento County. Thus, although aimed at limiting exposure to a deadly virus, the Writ, if the City was obeying it, would also serve to protect the unhoused from exposure to extreme heat, which can also result in great bodily harm and death. (See, Declaration of Anthony Prince).

The City continues to ticket, seize and tow vehicles which serve as residence and provide protection, if limited, from extreme heat. As the declarations filed herein show, those who have lost or face the loss of these vehicles are thereby placed at greater risk of harm and, like those swept from encampments, are either not aware of or unable to travel to the inadequate handful of cooling centers.

The City's Opposition to Plaintiffs' Motion for Mandatory Injunction, containing glaring misstatements of fact, out-of-context cherry-picked quotes from cases with facts completely distinguishable from those in the present case and an absence of any declarations or other evidence rebutting Plaintiffs contentions, including those of public health expert Flojaune Cofer, PhD MPH, fails to negate Plaintiffs' showing of compliance with the elements requiring injunctive relief.

Plaintiffs' Reply to Defendant City of Sacramento's Opposition to Plaintiffs Motion for Injunctive Relief

Page | - 2 -

**City's Claim That Police Have Not Conducted Sweeps Since 2018 is False; Two years after *Martin v. Boise*, the Homeless Union Sought and Was Granted a Motion for a Writ of Mandate to Stop the City from Clearing Encampments.**

Defendant City of Sacramento baldly and falsely asserts that its police department has not conducted a single sweep of a homeless encampment since 2018 when the Ninth Circuit issued its seminal ruling in *Martin v. Boise,* 920 F.3d. 584 (9th Cir. 2018). Yet, on July 28, 2020, two years after *Martin,* Superior Court Judge Laurie M. Earle issued an Order for Writ of Mandate against the City of Sacramento "to refrain from clearing homeless persons or encampments from public property in violation of the County Health Officer's Order[.]" See, Declaration of Anthony D. Prince.

Prior to Judge Earle's order, and in the midst of the still-ongoing COVID-19 pandemic, the County Health Officer Olivia Kasirye had issued an order on May 22, 2020, informed by the admonition of the U.S. Centers for Disease Control and Prevention (CDC), against clearing homeless persons and encampments. However, on Jun 26, 2022, the City violated the Health Order when Sacramento police forced Carol Byrnes and George Campbell, both homeless, to leave Roseville Road where they were encamped. It was at that point that the Union went to Court and obtained the Writ of Mandate, which has never been dissolved and is still in effect.[1]

Defendant provides, by way of Police Captain Bryce Heinlein's declaration, a misleading definition of the term "sweep" as it applies to the eradication of a homeless encampment or the removal of a homeless person from an area where they are encamped. In fact, as shown by the

---

[1] As highly transmissible variants of the coronavirus continue to spread, it is important to note that the July 28, 2020 Writ of Mandate has never been dissolved or lifted. When first Ordered and Plaintiffs submitted their Proposed Order to the Court, the City of Sacramento attempted to insert a "sunset" clause that would "automatically terminate" the writ if the County Health Officer either lifted the local emergency related to Covid-19 or revised it to eliminate restrictions on moving homeless persons from their encampments. The Court rejected the City's version and the final Order did not include the City's proposed sunset provisions and is, therefore, still in effect. (See, Prince Declaration) Thus, Defendant City of Sacramento is already under an order "to refrain from clearing homeless persons or encampments from public property[.]"

Plaintiffs' Reply to Defendant City of Sacramento's Opposition to Plaintiffs Motion for Injunctive Relief

Declarations filed herewith, Sacramento Police officers *are* conducting sweeps, in some cases accompanied and in other cases unaccompanied by City code enforcement officers. See, Declarations of Betty Rios, Elizabeth Mallard, Mike Lopez, Lena Marino and Crystal Sanchez.

Indeed, this self-serving definition is designed to conceal three things:

First, insofar as notices may be posted to camp residents to leave by a time and date certain, the notice itself constitutes the beginning of and is an integral part of the sweep. Second, by suggesting that "sweep" is synonymous with "instantaneous removal", "without any notification", and "outside a legal response [sic]," Captain Heinlein attempts a distinction that is without a difference given that without a place to go, in a City that admits it has zero shelter space, a 72-hour notice is as meaningless and illusory as one for seven hours or seven minutes. See, Declaration of Betty Rios.

Finally, Captain Heinlein's flat denial that either the police or the City of Sacramento conduct sweeps, cannot be reconciled with the City-hired contractors who do the bulldozing and drive the garbage trucks into which the possessions of the homeless are routinely tossed. Moreover, as set forth in Plaintiffs' declarations, Captain Heinlein's statement is simply false inasmuch as Sacramento Police have for years defied court orders and continue to carry out on-the-spot sweeps, without notice and "outside a legal response," whatever he intends that to mean. See, Declarations of Crystal Sanchez and Betty Rios.

**City Misunderstands the Plain Language of Government Code Section 8558 (c) Which Does Not Exclude Extreme Heat From Its List of Possible Conditions for Declaration of a Local Emergency**

In its Opposition, the City quotes but then ignores the definition of a local emergency in Government Code Section 8558(c). While it provides an extensive list of possible conditions that may give rise to the declaration of a local emergency, it immediately precedes the list with the words "caused by conditions *such as*…" (City's Opposition at P.3, Emphasis added.) By using the

words "such as," the plain language of Section 8558(c) means that the list is one of examples and is not exclude other conditions not listed as examples, but which constitute "disaster *or extreme peril* to the safety of persons and property[.]" (City's Opposition at P. 2, Emphasis added.)

Nowhere in its Opposition does the City present countervailing evidence or contest Plaintiffs' contention that exposure of unsheltered persons to extreme heat, who have not been provided with a sufficient number of actually accessible cooling centers face conditions of extreme peril. The issue here is whether the City has provided such respite from the risks of heat stress, heat stroke, aggravation of existing underlying medical conditions and even death. Three cooling centers and public libraries half of which don't open until noon and all of which close at 6:00 pm and have no staff trained to properly operate a cooling center pursuant to the County's own guidelines is not adequate even if the City was providing awareness and transportation, which it is not.

Moreover, between the time Plaintiff filed suit and the filing of this Reply Brief, the results of the most recent Point In Time ("PIT") Count of officially designated unsheltered persons in Sacramento were released showing a 67% increase from 5,500 to 9,700! Yet, the number of designated cooling centers has remained unchanged. It simply defies logic, even accepting the position of the City and County that they had "done enough", that the number of cooling centers deemed adequate for 5,500 people would still be adequate for almost twice that number.

**Plaintiffs qualify for mandatory injunction because Defendants have failed to take adequate measures to protect the unhoused from the risk of "extreme or very serious damage" by way of unprotected exposure to extreme temperatures.**

Defendant City of Sacramento relies upon *Garcia v. Google*, *Marylynn Pharmaceuticals* and *Doe v. Snyder* which, which set forth the test for issuance of a mandatory injunction but, based on the facts before each court, did not find the risk of "extreme or very serious danger" to be present. Garcia was a copyright case in which such danger was found to be highly remote. Marylynn Pharmaceuticals was another copyright dispute and Doe v. Snyder involved defendant's refusal to

perform chest reconstruction surgery on a transgender person where the Court agreed that the refusal did not pose an extreme or very serious danger.

Here, sweeping homeless encampments where a modicum of protection from the heat exists, exiling them to the sweltering, heat-absorbing sidewalks and streets and failing to provide sufficient, actually accessible and effectively announced cooling centers presents the very real risk of great bodily harm and event death as set forth in the uncontested expert declaration of Dr. Flojaune Cofer and the exhibits attached thereto filed in support of Plaintiffs' motion for mandatory injunction.

Even, in temperatures below triple digits or the nineties, the risk is there. "With extreme temperature rise, your risk for suffering health issues, like heat exhaustion and heat stroke, are definitely a lot more likely to happen with temperatures *rising above 90*," reports Cindy Keely, director of quality and systems improvement for the American Heart Association. See Declaration of Anthony D. Prince. Director Keeler's opinion is supported by the official definition of extreme heat established by the United States Government as it appears at "Ready", "[a]n official website of the United States Government" and which reads, "Extreme heat is a period of high heat and humidity with temperatures *above 90 degrees* for at least two to three days."  (Emphasis added.) The same definition is provided by the Federal Emergency Management Agency (FEMA) on its website posting entitled "Be Prepared for Extreme Heat" and states, "In most of the U.S., extreme heat is a long period (2-3 days) with temperatures above 90 degrees." (Emphasis added.) See, Declaration of Anthony D. Prince.

Thus, the determination and conduct of the City and County in refusing to declare an extreme heat emergency unless temperatures reach triple digit and their justification of reliance on the Experimental HeatIndex method, is at variance with the official position of the United States Government. In any event, to the extent that they seems to argue a specie of the regulatory compliance defense, Defendants run afoul of well-settled limitations on the doctrine. The Second

Plaintiffs' Reply to Defendant City of Sacramento's Opposition to Plaintiffs Motion for Injunctive Relief

Restatement of Torts, for example, states that compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable person would take additional precautions. Restatement (Second) of Torts § 288. ("Where a statute, ordinance or regulation is found to define a standard of conduct […] the standard defined is normally a minimum standard, applicable to the ordinary conditions contemplated by the legislation. This legislative or administrative minimum does not prevent a finding that a reasonable [person] would have taken additional precautions where the situation is such as to call for them." Ibid.

Here, the administrative policy of the City and County to be guided by a process that admits on its face that it is experimental and, on its face, denies the official U.S. government definition of extreme heat is highly problematic. Here Defendant's use of the Experimental HeatIndex process to justify its refusal to declare a local emergency and its failure to take sufficient steps ("additional precautions") to protect one of its most vulnerable populations is compounded by the City and County's disregard of the County's own guidelines. Those guidelines, which are attached as an exhibit to the Second Amended Exhibit A to the Declaration of County OES Director Mary Jo Flynn, use the word "homeless" at least eight times and calls for the planning and implementation of specific measures to protect the unhoused. Yet, neither City nor the County ever developed and has not implemented any such plan. See also Declaration of Crystal Sanchez.

Finally, and perhaps most glaringly, the City's Opposition completely ignores and thereby leaves uncontested Plaintiffs' allegations of deplorable conditions at its own City-operated "Safe Ground" at Miller Park as set forth in the Declaration of Falisha Scott in Support of Plaintiffs' Motion for Injunctive Relief. As she reports in her Supplemental Declaration filed herewith, the City has not even investigated, let alone remedied the lack of water, food, sweltering temperatures in the tents or made any effort to publicize and offer transportation to a cooling center.

## CONCLUSION

Defendants City of Sacramento and County of Sacramento have failed to show that its efforts are sufficient or that Plaintiffs have failed to show that the conditions for the declaration of a local emergency do not exist. The County cannot have it both ways: it cannot concede by word and action that temperatures certainly at but also below three digits put those most vulnerable at peril and then make a wholly inadequate, token and ineffective response. Plaintiffs believe they have met the standards and satisfied the elements required for issuance of a mandatory injunction and pray that the Court issue orders along the lines set forth in their Complaint and Motion.

Dated: July 25, 2022                                          Respectfully Submitted,

/s/Anthony D. Prince,

Attorney for Plaintiffs.

Plaintiffs' Reply to Defendant City of Sacramento's Opposition to Plaintiffs Motion for Injunctive Relief

Page | - 8 -