SUSANA ALCALA WOOD, City Attorney (SBN 156366)
**GRACE L. PAK, Senior Deputy City Attorney (SBN 263733)**
glpak@cityofsacramento.org
CITY OF SACRAMENTO
915 I Street, Room 4010
Sacramento, CA  95814-2608
Telephone:  (916) 808-5346
Facsimile:   (916) 808-7455

Attorneys for the CITY OF SACRAMENTO

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO HOMELESS UNION, a local of the CALIFORNIA HOMELESS UNION/STATEWIDE ORGANIZING COUNCIL, on behalf of itself and those it represents; BETTY RIOS; DONTA WILLIAMS; FALISHA SCOTT and all those similarly situated,<br><br>            Plaintiffs,<br><br>   vs.<br><br>COUNTY OF SACRAMENTO, a political subdivision of the State of California; CITY OF SACRAMENTO, a municipal corporation; and DOES 1 – 100,<br><br>            Defendants. | Case No.:  2:22-cv-01095-TLN-KJN<br><br>**CITY OF SACRAMENTO'S OPPOSITION TO PLAINTIFFS EX-PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND RE-INSTATEMENT OF PRIOR PRELIMINARY INJUNCTION OR FOR NEW PRELIMINARY INJUNCTION**<br><br>Complaint Filed: June 24, 2022 |

## I.   <u>INTRODUCTION</u>

Defendant CITY OF SACRAMENTO ("City") respectfully submits the following

Opposition to Plaintiffs' Ex Parte Motion for Temporary Restraining Order ("TRO") and

Re-Instatement of Prior Preliminary Injunction filed on August 1, 2023 at 4:00 p.m.

Plaintiffs seek the immediate issuance of a TRO until August 10, 2023, the date set by

plaintiffs for hearing on the preliminary injunction, enjoining the City from clearing

encampments belonging to the unhoused or people experiencing homelessness ("PEH") citing to triple-digit temperatures and the risk for great bodily harm or death to the unhoused. (ECF No. 36, ¶ 45.)  The City files this Opposition to plaintiffs' request for a TRO within 24 hours after plaintiffs' August 1st filing to address the misstatements proffered by plaintiffs' in support of their Motion.  Further, plaintiffs' request for a TRO is not timely pursuant to Local Rule 231(b) as plaintiffs "could have sought relief by motion for a preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order" because they were aware that summer would once again result in heat and delayed in filing a motion at an earlier date.  To date, Sacramento has already had multiple 100+ degree days of heat.  Plaintiffs fail to show *immediate* and irreparable injury now as required by Federal Rule of Civil Procedure 65.  Thus, the Court should deny plaintiffs' motion for TRO and set a full briefing schedule and hearing to enable the City to address the arguments raised by plaintiffs.  To that end, the City intends to file a more comprehensive opposition to the preliminary injunction once the briefing schedule has been set forth by the Court.

## II.  BACKGROUND

### A.  FACTUAL BACKGROUND

Since the Summer of 2022, the City has taken significant steps to address the homelessness crisis plaguing its community.  On August 23, 2022, the City Council adopted Chapter 12.24 to the Sacramento City Code regarding Sidewalk Obstructions and Pedestrian Interference and also adopted Resolution No. 2022-0286 directing the City Manager to issue guidelines for enforcement.  Further, on October 18, 2022, the City Council adopted Resolution No. 2022-0322 approving the City Manager's designation of specified locations as critical infrastructure for purposes of Sacramento City Code Chapter 8.140 regarding Protection of Critical Infrastructure and Wildfire Risk Areas.  On October 18, 2022, the City developed a Citywide Homelessness Response Protocol to provide structural guidelines for the City's interdepartmental response to homeless encampments and also created a policy guidance memo on November 28, 2022 to address the City's enforcement of its sidewalk

CITY OF SACRAMENTO'S OPPOSITION TO PLAINTIFFS' EX PARTE PARTE MOTION FOR TRO
1310277

ordinance codified at Chapter 12.24 of the Sacramento City Code.  The City Council has also held meetings dedicated solely to homelessness issues on June 27, 2023 and August 1, 2023.  Collectively, these efforts seek to balance the City's obligation to ensure that all residents, unhoused and housed alike, are able to safely live and work in the City and enjoy its public spaces.

The City submits the Declarations of Assistant City Manager Mario Lara, Captain Bryce Heinlein of the Sacramento Police Department, Homeless Services Manager Nick Golling, and Meteorologist Jan Null in support of its Opposition to plaintiffs' motion for a TRO.

### B.  PROCEDURAL BACKGROUND

On June 24, 2022, plaintiffs filed their Complaint and Ex Parte Application for Mandatory Injunction and Temporary Restraining Order naming the City and County of Sacramento as defendants.  (ECF Nos. 1-2.)  As to the City, plaintiffs asserted four claims: (1) state-created danger in violation of due process guaranteed by the Fourteenth Amendment to the U.S. Constitution under 42 U.S.C. § 1983; (2) state-created danger in violation of due process guaranteed under Article I, § 7 of the California Constitution; (3) violation of Article I, § 1 of the California Constitution; and (4) violation of California Health and Safety Code section 101025.

On July 20, 2022, the City opposed plaintiffs' Emergency Application for Mandatory Injunction and Temporary Restraining Order. (ECF No. 19.)  Plaintiffs filed their reply on July 25, 2022 (ECF No. 20) and on July 29, 2022, the Court issued its Order.  (ECF No. 22.)  As to the City, the Court granted plaintiffs' "request to temporarily enjoin the City and all of its officers, agents, servants, employees, attorneys, and all persons under their direction and control, from clearing encampments belonging to the unhoused."  (ECF No. 22; 23:6-8.)  The Court ordered the preliminary injunction to remain in effect for 28 days.  (ECF No. 22; 23:16.)

On August 24, 2022, plaintiffs filed their Motion to Extend or Reinstate Preliminary Injunction Against the City and requested sanctions.  (ECF No. 24.)  The City once again opposed plaintiffs' motion.  (ECF No. 28.)  While the Court denied plaintiffs' request for

1  sanctions in its September 2, 2022 Order, it granted plaintiffs' request for extension of the
2  preliminary injunction to enjoin the City from clearing homeless encampments until
3  September 23, 2022.  (ECF No. 33; 18:25-19:7.)
4      Plaintiffs now seek issuance of a TRO until August 10, 2023, the date selected by
5  plaintiffs for a hearing on the preliminary injunction contending that the same conditions
6  articulated in 2022 exist this year to warrant issuance of an order enjoining the City from
7  moving or clearing homeless encampments.
8  **III. LAW**
9      A preliminary injunction is an "an extraordinary remedy never awarded as of right."
10  *Winter v. NRDC*, 555 U.S. 7, 24 (2008).  To obtain preliminary injunctive relief, including a
11  TRO, plaintiffs must show that: a) they are likely to succeed on the merits; b) plaintiffs are
12  likely to suffer irreparable harm in the absence of relief; c) the balance of equities tips in
13  plaintiffs' favor; and d) an injunction is in the public interest.  *Id.* at 20.  *Winter v. NRDC*
14  affirmed that irreparable harm has to be "likely" as opposed to just "possible."  *Id.* at 22; *see*
15  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) (in light of *Winter*,
16  without a showing of irreparable harm in the first instance, no balancing of remaining factors
17  is permitted).  Injunctions must be "narrowly tailored … to remedy only the specific harms
18  shown by the plaintiffs."  *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004).
19  **IV. ARGUMENT**
20      **A.    PLAINTIFFS' EX PARTE MOTION FOR A TRO SHOULD BE DENIED.**
21      Plaintiffs' TRO should be denied as they have not demonstrated such relief is
22  appropriate.  Although the United States Supreme Court has recognized that there is no
23  fundamental right to housing, the Ninth Circuit recognizes liability under substantive due
24  process where a state or local official acts to place a person in a situation of a known danger
25  with deliberate indifference to their personal or physical safety.  *Kennedy v. City of Ridgefield*,
26  439 F.3d 1055, 1061-62 (9th Cir. 2006). "'[D]eliberate indifference' is a stringent standard of
27  fault, requiring proof that a municipal actor disregarded a known or obvious consequence of
28  his action." *Board of County Com'rs of Bryan County*, *Okl. v. Brown*, 520 U.S. 397, 410 (1997).

4

"In examining whether [the city] affirmatively places an individual in danger, [a court does] not look solely to the agency of the individual, nor [does it rest its] opinion on what options may or may not have been available to the individual. Instead, [the court must] examine whether [the city] left the person in a situation that was more dangerous than the one in which they found him." *Kennedy*, 439 F.3d at 1062 (citation omitted).

Here, while plaintiffs focus on the unhoused and their plight, the City must consider the health and welfare of *all* its residents.  The City is addressing its homelessness crisis by engaging with and dedicating resources to PEH as well as enforcement efforts.  As set forth in the declarations of Captain Bryce Heinlein and Assistant City Manager Mario Lara, there are encampments that pose public safety concerns that necessitate an immediate response. For example, as set forth in the Declaration of Bryce Heinlein, the City conducted a joint outreach operation to seek camp compliance and to offer safe alternative shelter to approximately 38 encampments and 31 people located at 28th and C Streets in Sacramento from July 12 – July 21, 2023.  (Heinlein Decl. ¶ 11.)  This particular location was heavily inhabited by both tent encampments and out of compliance vehicles and since early 2023, had been the source of countless calls from the community complaining of criminal activity including narcotic activity, prostitution, theft and vandalism.  During this operation, 12,400 pounds of trash and debris and 813 syringes were disposed of.  (Heinlein Decl. ¶ 11.)

This is a staggering six tons of trash and 800+ syringes for just *one* site with fewer than 40 people.  Syringes pose a public safety health hazard to all, and the City must be able to address encampments like these that contribute to community blight and crime.  It cannot be reasonably supported that such conditions are acceptable or should be allowed to persist. Further, contrary to plaintiffs' inflammatory allegations regarding the conditions at Miller Park as set forth in their accompanying declarations, it does not constitute an increased risk of harm as set forth in the Declaration of Nick Golling.  The actions of the City to clear encampments where necessary and consistent with its enforcement protocols is essential to protecting the City and all its residents.

/ / /

### B.     PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS.

With respect to plaintiffs' request to enjoin the clearing of *all* encampments within the City, which they erroneously term as "sweeps", such a broad request for relief does not consider the individualized circumstances at stake.  First, plaintiffs' contention that the summer heat of 90 degrees alone can and should be used to halt the entirety of the City's efforts in addressing public safety concerns posed by certain encampments is overly broad and unlikely to succeed on the merits.  Contrary to plaintiffs' assertions that the City is disregarding its own homeless response protocols and as set forth in the Declaration of Mario Lara, 90 degrees is not an upper limit set by the City of Sacramento; rather, given the Court's 2022 Orders enjoining the City from clearing encampments from approximately the end of July 2022 to mid-September 2022, this was included to reflect the possibility that temperature thresholds could be as low as 90 degrees.  Further, heat is one factor to consider among many other factors and the City has never utilized heat as the sole consideration when there are immediate public health and safety risks.  (Lara Decl. ¶ 3.)  In addition, Exhibit C to the Declaration of Crystal Sanchez setting forth the August 2023 forecast is not reliable as set forth in the Declaration of Jan Null, a meteorologist with training and experience in weather forecasts.

Second, plaintiffs' supporting declarations focus on Miller Park and make inflammatory statements and assumptions lacking basis in fact.  As set forth in the Declaration of the City's Homeless Services Manager Nick Golling, he conducted a surprise inspection of Miller Park on July 25, 2023 following comments made by Charles Pfost, a declarant in this matter.  In sum, the conditions at Miller Park do not constitute a state created danger as plaintiffs' assert.  (See Golling Decl. ¶ 14.)

Third, as to plaintiffs' contention that the City's critical infrastructure ordinance is a "means to effectively ban homeless persons from areas that provide more natural protection from the intense heat" is simply without merit.  (ECF No. 36; ¶ 25.)  Plaintiffs are incorrect that the 500' buffer applies to *all* critical infrastructure designated by the City.  Thus, Exhibit I to the Declaration of Crystal Sanchez is not accurate.  The 500-ft. buffer is only around

6

schools as per the City Manager as approved by City Council vote on October 18, 2022 (See Decl. of Mario Lara, Ex. A.)  Per Sacramento City Code sections 8.140.030(A)(2)-(3) and 8.140.030(B)(2)-(3), the default buffer around designated critical infrastructure is 25 feet around the critical infrastructure plus 25 feet from vehicular or pedestrian entrances and exits of said critical infrastructure.  Thus, plaintiffs' reliance on the Declaration of Crystal Sanchez for the proposition that the homeless are banned from 41.65% of the City's 99.4 square miles and are completely banned from 78.74% of the City should be disregarded in its entirety. (See ECF No. 36-1; ¶ 19.)

### C.    PLAINTIFFS ARE NOT LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF RELIEF.

Plaintiffs' TRO should be denied as there have been multiple 100+ degree days in Sacramento and numerous 90+ degree days this summer.  Plaintiffs do not articulate *how* plaintiffs will be specifically harmed between now and August 10th other than making generalized assumptions and conclusions.  Plaintiffs could have sought injunctive relief at an earlier date prior to the start of the summer since the harm they allege now existed in June of 2023.  While plaintiffs may argue that they were engaged in discussions with the City as set forth in the Declaration of Anthony Prince, the conditions identified in plaintiffs' Motion now do not set forth that they are likely to be irreparably harmed in any sort of legally recognizable manner by the City and thus, the court's analysis can and should simply end here.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) (in light of Winter, without a showing of irreparable harm in the first instance, no balancing of remaining factors is permitted).

### D.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGHS IN FAVOR OF DENYING THE TRO.

For a TRO to issue, Plaintiffs have the burden of making a strong showing that the balance of harms tips in their favor.  *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (2019).  When balancing both parties' harms, the court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."

*Winter, supra*, 555 U.S. at 24 (quotation omitted).  When the government is the target of the injunction, these factors merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the balance of harms and public interest strongly disfavors the issuance of a TRO.  The right of local governmental officials to make necessary decisions to protect against unsafe and unsanitary conditions risking public safety for all outweighs plaintiffs' desire to remain where they are. In the City's declarations filed concurrently, it has presented compelling evidence that clearing encampments when necessary and in accordance with the City's protocols and ordinances and within the discretion of the City's legislative function and police powers. Here, plaintiffs rely on entirely unsubstantiated 'state created danger' declarations of laypersons, none of which negate the deference afforded to the City's public health and safety determinations, much less satisfy plaintiffs' heavy burden of proof in seeking extraordinary injunctive relief.

## V.   <u>CONCLUSION</u>

Based on the foregoing, the City respectfully requests that the Court deny plaintiffs' motion for issuance of a temporary restraining order.

DATED:  August 2, 2023              SUSANA ALCALA WOOD,
                                    City Attorney


                            By:    <u>/s/ GRACE L. PAK</u>
                                   **GRACE L. PAK**
                                   Senior Deputy City Attorney

                                   Attorneys for Defendant
                                   CITY OF SACRAMENTO