UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO HOMELESS UNION, et al., | No. 2:22-cv-01095-TLN-KJN |
| Plaintiffs, | |
| v. | **ORDER** |
| COUNTY OF SACRAMENTO, et al., | |
| Defendants. | |

This matter is before the Court on Plaintiffs Sacramento Homeless Union, Betty Rios, Donta Williams, and Falisha Scott's (collectively, "Plaintiffs") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 36.) For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiffs' motion.

///
///
///
///
///
///
///

1

## I. Factual and Procedural Background

A full recitation of the factual background of this case is set forth fully in the Court's prior order. (ECF No. 22.) In short, the instant case arises from Defendants' alleged failure to discharge their duties during Sacramento's triple-digit heat wave to protect the unhoused, one of society's most vulnerable populations. (*See* ECF No. 1.) This case began on June 24, 2022, when Plaintiffs filed the operative complaint and a motion for a TRO. (ECF No. 1.) After setting a briefing schedule and reviewing the parties' filings, the Court granted in part and denied in part Plaintiffs' motion on July 29, 2022. (ECF No. 22.) The Court granted the motion only "with respect to Plaintiffs' request to enjoin the City and all of its officers, agents, servants, employees, attorneys, and all persons under their direction and control, from clearing encampments belonging to the unhoused." (*Id.* at 23.) The preliminary injunction remained in effect for 28 days. (*Id.*) Plaintiffs filed a motion to renew or extend the preliminary injunction on August 24, 2022. (ECF No. 24.) The Court granted Plaintiffs' motion and extended the preliminary injunction through September 23, 2022. (ECF No. 33.) On August 1, 2023, Plaintiffs filed the instant motion for a TRO. (ECF No. 36.)

## II. Standard of Law

A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. See Fed. R. Civ. P. 65. It is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction. Local Rule 231(a); *see also Aiello v. One West Bank*, No. 2:10-cv-0227- GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) ("Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.").

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The

purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted).  In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005).  Preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.*  Simply put, Plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

///

### III. ANALYSIS

The instant motion for a TRO is based on nearly identical factual and legal grounds as the motion for a TRO the Court granted this time last year. As in their prior motion, Plaintiffs again contend the City is clearing homeless encampments during periods of extreme heat. (ECF No. 36 at 1–2.) Plaintiffs further contend the City "offered" to relocate the displaced individuals to its "Safeground" site at Miller Park, a location where individuals are crowded together in tents with no shade. (*Id.* at 3.) To support these arguments, Plaintiffs provide declarations from unhoused individuals who were subject to sweeps in mid-July 2023. (ECF No. 36-3 at 25–42.)

In their motion, Plaintiffs discuss the political developments surrounding this issue since the Court's last order, which they argue have prevented informal resolution of this matter. These developments include: a new sidewalk ordinance; a measure that allows any person to initiate a lawsuit against the City for failure to clear homeless encampments; expansion of area within City limits defined as "critical infrastructure" where camping is banned; and public demands from the Presiding Judge of the Sacramento Superior Court and the District Attorney calling for increased police presence at and around the main courthouse to enforce code violations. (ECF No. 36 at 3.)

Plaintiffs also provide evidence showing it is forecasted that temperatures of 90 degrees Fahrenheit or greater will occur on 21 days in the month of August 2023. (*Id.* at 5 (citing ECF No. 36-2 at 11–16.).) Plaintiffs argue the City in its Homelessness Response Protocol from August 2022 defined temperatures above 90 degrees Fahrenheit as "excessive heat" and listed it as a factor to be considered when determining whether to clear an encampment. (*Id.* (citing ECF No. 36-2 at 8.) Plaintiffs argue that despite these protocols, the City continues to conduct widespread clearing of encampments, which displaces unhoused individuals from areas of protection from the sun and heat into more exposed areas. (*Id.*)

For these reasons, Plaintiffs seek to enjoin the City from clearing encampments through mid-September 2023, when temperatures are expected to fall below 90 degrees Fahrenheit. (*Id.* at 15–16.) Plaintiffs also seek to enjoin the City from preventing Union representatives, advocates, and community supported entry to the Miller Park "Safeground" so that they may assist residents in investigating and alleviating the dangerous conditions therein. (*Id.*)

4

Because Plaintiffs' motion is rooted in substantially analogous facts and legal arguments to their previous motions, the Court's analysis remains largely the same as that of its previous orders. In its previous orders, the Court addressed the *Winter* factors in detail. Due to the similarities discussed above, the Court adopts this previous reasoning herein. (*See* ECF Nos. 22, 33.) Based on this reasoning and Plaintiffs' representations in the instant motion, the Court again concludes Plaintiffs have satisfied the *Winter* factors with respect to the clearing of encampments. Specifically, the Court finds:

1. As to likelihood of success on the merits, the Court concludes for the same reasons discussed in its prior orders, Plaintiffs have shown a likelihood of success on a Fourteenth Amendment state-created danger claim. Put simply, Plaintiffs have presented sufficient evidence, at this stage, to demonstrate the City's clearing of encampments constitutes "affirmative conduct" that places unhoused individuals at an increased risk of the "known and obvious danger" of exposure to extreme heat. (ECF No. 22 at 13–14; ECF No. 33 at 9.)

2. As to imminent and irreparable harm, the Court concludes Plaintiffs' evidence forecasting excessive heat for the upcoming weeks and detailing the risks of heat-related deaths and illnesses is sufficient to show that irreparable harm will result in the absence of injunctive relief. (ECF No. 22 at 20–21; ECF No. 33 at 10.)

3. As to the balancing of equities and public interest, the Court previously concluded that the City's interest in clearing encampments during extreme heat is far outweighed by Plaintiffs' interest in the health and welfare of unhoused individuals. (ECF No. 22 at 21–22; ECF No. 33 at 15–17.) This finding remains true today and the Court reaffirms it here.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for a TRO with respect to Plaintiffs' request to temporarily enjoin the City and all of its officers, agents, servants, employees, attorneys, and all persons under their direction and control, from clearing encampments belonging to the unhoused. (ECF No. 36.) The Court DENIES Plaintiffs' motion in all other respects. The TRO shall remain in effect for fourteen (14) days.

///

1  The Court sets the following briefing schedule: Defendants shall file an opposition not later than 5:00 p.m. on August 7, 2023, and Plaintiffs may file a reply not later than 5:00 p.m. on August 9, 2023. In their briefing, the parties shall address what effect, if any, the Ninth Circuit decision in *Johnson v. City of Grants Pass* has on the instant case. 72 F.4th 868 (9th Cir. 2023).

In addition, in recognition that the TRO is broad, the Court ORDERS the parties to meet and confer and file a joint statement regarding possible ways to narrow the scope of any future injunctions to best balance the competing interests at play. For example, the parties should discuss how to prioritize exceptions for "critical infrastructure" for the City of Sacramento as defined by the City and the federal government. The parties shall file this joint statement not later than 5:00 p.m. on August 9, 2023.

After considering the parties' filings, the Court will determine whether to extend, modify, or terminate the injunction.

IT IS SO ORDERED.

Date: August 2, 2023

Troy L. Nunley
United States District Judge