Anthony D. Prince (SBN # 202892)
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

Attorneys for Plaintiffs

# UNITED STATES COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO HOMELESS UNION, a local of the CALIFORNIA HOMELESS UNION/STATEWIDE ORGANIZING COUNCIL, on behalf of itself and those it represents; BETTY RIOS; DONTA WILLIAMS; FALISHA SCOTT and all those similarly situated,<br><br>    Plaintiffs<br><br>vs.<br><br>COUNTY OF SACRAMENTO, a political subdivision of the State of California; CITY OF SACRAMENTO, a municipal corporation; and DOES 1 – 100,<br><br>    Defendants. | Case No.: 2:22-cv-01095-TLN-KJN<br><br>**PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT CITY OF SACRAMENTO SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING TEMPORARY RESTRAINING ORDER; DECLARATION OF ANTHONY D. PRINCE.** |

**PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY CITY OF SACRAMENTO SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING TEMPORARY RESTRAINING ORDER and DECLARATION OF ANTHONY D. PRINCE**

  A civil contempt order is proper where the alleged contemnor (1) violated [a] court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence. *Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro Transp. Auth.* 564 F.3d 1115, 1123 (9th Cir. 2009) (citing *In re Dual-Deck Video Cassette REcorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).


The moving party has the burden of showing by clear and convincing evidence that te contemnors violated a specific and definite order of the court. The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *Dual-Deck*, 10 F.3d at 695. A district court has wide latitude in determining whether there has been a contemptuous defiance of its order." *Gifford v. Heckler,* 741 F.2d 263, 266 (9th Cir. 1984.)

On August 3, 2023, this Court issued a Temporary Restraining Order instructing the City of Sacramento "and all of its officers, agents, servants, employees, attorneys, and all other persons under their direction and control, from clearing encampments belonging to the unhoused." Doc.39. Although the City sought exceptions from the TRO under various anti-camping ordinances including for "critical infrastructure" –which City Hall has been designated, the Order does not provide them.

The scope of the TRO extends to the Sacramento City Hall Plaza where, pursuant to a "Sit-Lie" Ordinance, unhoused persons have been prohibited during the day, although permitted to camp and sleep overnight. Routinely, for almost three years, Sacramento Police officers and private security employed by the City of Sacramento have appeared at sunrise to disperse the campers which, up until now, have numbered between 20 and 40 persons depending on weather and other conditions.

On August 4, 2023, the day after the TRO went into effect, Plaintiff Sacramento Homeless Union received a report that the City Hall campers had been cleared from the Plaza. Attorney Anthony Prince received this information while driving to Sacramento for a scheduled noon press conference at City Hall. When he and others arrived, they immediately contacted the complete absence of campers and promptly notified the City Attorney by phone and email.

Almost four hours later, the City Attorney having failed to respond, Attorney Prince again contacted the City Attorney by email: "You have not responded to my message of several hours ago regarding a violation of the TRO at City Hall. We have confirmed that contractors employed as

*Motion for Order to Show Cause*

Security Guards for City Hall removed the homeless this morning. The injunction expressly applies to the Security Guards and does not provide any exceptions, such as the "critical infrastructure" or government buildings. It is the City's obligation to communicate the Court's order to all employees, agents, contractors, etc.

Finally, at 3:50 pm, City Attorney Andrea Velasquez emailed Attorney Prince: "Thank you for letting us know. We have addressed the issue with SPD and it should not occur again while the TRO is in place."

At 4:50 pm Plaintiffs' counsel emailed the City Attorney writing: Thank you for responding. Unfortunately, not only were campers removed, but in talking to some of those who went to Cesar Chavez Park, where they have routinely gone after the daily sweeps, there is now confusion and concern about their right to be at City Hall during the day and even at night. I strongly suggest that you post a notice that campers are entitled to remain at the location 24 hours a day until the current TRO expires or longer should the Court extend its Order.

On Monday morning, August 7, 2023, Plaintiff Homeless Union learned that, once again, police and security guards had dispersed the City Hall campers. Before Union officers could arrive at City Hall, City Attorney Grace Pak sent a message to Attorney Prince admitting the City's actions, but, again providing an excuse.

Shortly thereafter Mr. Prince contacted the City Attorney insisting that the City immediately go to the areas to which the campers had been dispersed and advise them of their right to be at the Courthouse during the day.

On Tuesday, August 8, 2023, Monica Coleman, at approximately 5:00 am, local television news reporter called Mr. Prince and told him that she and her crew were at City Hall and had watched while a person believed to be a City contractor began power washing the area where approximately 15 campers had been sleeping. According to Ms. Coleman—who later filed a report on the evening news—the power washer operator provided no warning or

*Motion for Order to Show Cause*

opportunity to the campers to move before he began spraying the high-pressure water. Instead, Ms. Coleman observed the campers grabbing what they could and fleeing. As of the time the news crew left, there were no campers at City Hall.

There is no direct evidence that the City acted deliberately in violating the Order. But under the law, the contempt need not be willful and there is no good faith exception to the requirement of obedience to a court order." *Dual-Deck*, 10 F.3d at 695. However, there is a thin line between acting deliberately and acting in disregard of clear orders, failing to promptly and effectively communicating to and overseeing obedience to the Order on the part of the Police Department, private security and all other agents, etc. The Union specifically advised the City and following the first violation on Monday, Aug. 7, the City represented that they had taken steps to insure compliance by their agents. Yet, the same excuse "an oversight" "misunderstanding" etc. was used not once, but twice and continues to be used in public statements to the media which has widely reported the story.

As a result of the City's misconduct, the number of campers at City Hall has dramatically shrunken and the Union, in its efforts to inform the displaced campers of their rights under the Order, has learned that many are now scared to return. Instead of being the substantial protection of the shade provided at City Hall Plaza, they are in the hot sun, at the increased risk of harm that the Injunction was intended to prevent.

If the City will not or cannot insure compliance at the building that houses its entire administration --City Hall --  how can the Court and the Plaintiffs be assured that it is insuring obedience anywhere else in Sacramento?

Last year, Plaintiffs informed the Court that the City had violated its injunction with regard to two homeless persons who police had told to leave the shaded safety of an overpass. Although the Court declined to impose sanctions, noting that Plaintiffs had no requested any

Page | - 4 -

*Motion for Order to Show Cause*

specific sanctions, it nonetheless included in its Order of September 2, 2022 "If the Court learns the City has violated this Order, the Court will not hesitate to issue sanctions in the future."

One year later, with a virtually identical Order in place and triple digits returning to Sacramento in a matter of days, Plaintiffs believe that the City must be deterred from all but the most rigid, thorough compliance on the its own part and that of those under its control. In order to address this situation as it unfolded in the midst of preparing Plaintiffs' Reply Brief as well as the Joint Statement ordered by the Court, counsel had to divert time and attention from other vital matters and expend approximately 7 hours acquiring the evidence necessary for presentation of this this Motion for OSC. This attorney has never charged the Sacramento Homeless Union for its representational and legal work and neither the Union nor this Law Office receives any funding from any source. With 24 years' experience in civil rights, disability, labor and employment law, my normal rate for clients other than the unhoused and the Homeless Union is in the range of $350 - $450 per hour.   Accordingly, Plaintiffs request monetary sanctions in the amount of $2,500 as well as further Orders from the Court to insure compliance and consequences for any further violations should, as Plaintiffs' pray, the Order is extended or a Preliminary Injunction is issued.

Under penalty of perjury under the laws of the United States and the State of California, I hereby swear and affirm that the emails attached hereto as Exhibit A are true and correct copies of communications between the City Attorney and myself.   I also swear and affirm that the facts presented in this motion are based on personal knowledge and otherwise on information and belief.

Dated: August 9, 2023                                         Respectfully Submitted,
Executed at Fresno, CA

/s/ Anthony D. Prince

Law Offices of Anthony D. Prince
Attorney for Plaintiffs

*Motion for Order to Show Cause*