UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO HOMELESS UNION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SACRAMENTO, et al., <br><br> Defendants. | No. 2:22-cv-01095-TLN-KJN <br><br> **ORDER** |

This matter is before the Court on Plaintiffs Sacramento Homeless Union, Betty Rios, Donta Williams, and Falisha Scott's (collectively, "Plaintiffs") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 36.) The City and County of Sacramento filed oppositions. (ECF Nos. 38, 41, 45.) Plaintiffs filed a reply. (ECF No. 46.) For the reasons set forth below, the Court MODIFIES and EXTENDS the existing injunction.

///
///
///
///
///
///

1

I. **FACTUAL AND PROCEDURAL BACKGROUND**

A full recitation of the factual background of this case is set forth fully in the Court's prior order. (ECF No. 22.) In short, the instant case arises from Defendants' alleged failure to discharge their duties during Sacramento's triple-digit heat wave to protect the unhoused, one of society's most vulnerable populations. (*See* ECF No. 1.) This case began on June 24, 2022, when Plaintiffs filed the operative complaint and a motion for a TRO. (*Id.*) After setting a briefing schedule and reviewing the parties' filings, the Court granted in part and denied in part Plaintiffs' motion on July 29, 2022. (ECF No. 22.) The Court granted the motion only "with respect to Plaintiffs' request to enjoin the City and all of its officers, agents, servants, employees, attorneys, and all persons under their direction and control, from clearing encampments belonging to the unhoused." (*Id.* at 23.) The preliminary injunction remained in effect for 28 days. (*Id.*) Plaintiffs filed a motion to extend the preliminary injunction on August 24, 2022, based on the weather forecast for the remaining summer months. (ECF No. 24.) The Court granted Plaintiffs' motion and extended the preliminary injunction through September 23, 2022. (ECF No. 33.)

On August 1, 2023, Plaintiffs filed the instant motion for a TRO. (ECF No. 36.) On August 3, 2023, the Court granted in part and denied in part Plaintiffs' motion. (ECF No. 39.) More specifically, as with its order in the Summer of 2022, the Court granted the motion only "with respect to Plaintiffs' request to temporarily enjoin the City and all of its officers, agents, servants, employees, attorneys, and all persons under their direction and control, from clearing encampments belonging to the unhoused." (*Id.* at 5.) The Court ordered the TRO to remain in effect for fourteen days. (*Id.*) The Court also set a briefing schedule and ordered the parties to file a joint statement regarding possible ways to narrow the injunction moving forward. (*Id.* at 6.) The matter is now fully briefed.

II. **STANDARD OF LAW**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until

a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted). In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

///

///

///

3

**III.   ANALYSIS**

The Court summarized Plaintiffs' arguments in its prior order and does not repeat those arguments herein. (*See* ECF No. 39.) The City opposes the TRO on the following grounds: (1) Plaintiffs are not likely to succeed on the merits on a Fourteenth Amendment state-created danger claim; (2) Plaintiffs are not likely to suffer irreparable harm because their claims as to excessive heat and its effects are overstated; (3) the balance of the equities does not tip in Plaintiffs' favor as the City must be able to protect critical infrastructure; and (4) the public interest is not served because some encampments pose legitimate public safety concerns and health risks. (ECF No. 45 at 7.) The City also submitted various exhibits with its filings, which the Court has considered. The Court will address the City's arguments in turn.[1]

        A.   Likelihood of Success

The City argues Plaintiffs cannot show they are at greater risk of harm living at the Miller Park Safe Ground ("Miller Park"), which offers various services and facilities to those who reside there, as opposed to unsanctioned encampments.[2] (*Id.* at 16–17.) In reply, Plaintiffs argue Miller Park does not offer protection from the excessive heat as it sits on asphalt, in direct sun, and away from large canopy shade trees. (ECF No. 46 at 3.)

The City's arguments are unpersuasive. For the same reasons the Court discussed in its prior orders, Plaintiffs have presented sufficient evidence, at this stage, to demonstrate the City's

---

[1] The County also filed an opposition. (ECF No. 41.) Plaintiffs do not seek an injunction against the County for clearing encampments — they only seek such relief against the City. (*See* ECF No. 36 at 15–16.) Plaintiffs sole claim against the County in the Complaint relates to the County's failure to open sufficient cooling centers. (ECF No. 1 at 15–16.) In the Summer of 2022, the Court denied Plaintiffs' request for injunctive relief against the County as to the cooling centers, and Plaintiffs did not renew that request in the instant motion. (*See* ECF No. 22.) However, Plaintiffs now request for the first time in their reply that the Court extend the injunction relating to clearing encampments to the County. (ECF No. 46 at 8.) The Court declines to do so based on the existing record. Because the injunction does not apply to the County, the Court need not and does not address the County's opposition.

[2] The City also argues two district court cases the Court cited in its original order — *Jeremiah v. Sutter County* and *Cobine v. City of Eureka* — are distinguishable from the instant case. (ECF No. 45 at 14–16.) After considering this argument, the Court still finds sufficient evidence of state-created danger. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006).

4

clearing of encampments constitutes "affirmative conduct" that places unhoused individuals at an increased risk of the "known and obvious danger" of exposure to extreme heat. (ECF No. 22 at 13–14; ECF No. 33 at 9.) The City indicates in the parties' joint statement that it agrees to provide more shade structures and tents that may provide more heat protection at Miller Park. (ECF No. 47 at 3.) However, the available evidence suggests that, even though Miller Park offers some facilities and services, the current structures and tents at Miller Park do not offer sufficient protection from the heat. The parties do not discuss any alternative safe ground sites or housing options available to unhoused individuals. Although the City indicates the City Council authorized the City Manager to create new safe ground sites on August 1, 2023, it is unclear when those sites will be available and whether they will offer more protection from the heat than existing encampments. (ECF No. 45 at 6.)

For the foregoing reasons, the Court finds a likelihood of success on the merits.

### B. Irreparable Harm

The City next argues not all unhoused individuals are similarly situated, and thus, the Court cannot assume that enjoining the City from clearing encampments will necessarily keep unhoused individuals safer from excessive heat. (ECF No. 45 at 18.) The City also argues that unlike Miller Park, certain encampments do not have drinking water or facilities. (*Id.* at 19.) In reply, Plaintiffs argue Miller Park is not an adequate solution to the risks of harm related to excessive heat. (ECF No. 46 at 3–4.)

Again, the City's arguments are unpersuasive. For the same reasons discussed in its prior orders, the Court concludes the weather forecast predicting excessive heat for the upcoming weeks and Plaintiffs' evidence detailing the risks of heat-related deaths and illnesses is sufficient to show that irreparable harm will result in the absence of injunctive relief. (ECF No. 22 at 20–21; ECF No. 33 at 10.)

### C. Balance of Equities and Public Interest

Lastly, the City argues the balance of equities and public interest weigh against granting an injunction because the City must be able to designate and protect critical infrastructure to ensure public health and safety. (ECF No. 45 at 19–22.) The City also emphasizes that its

definition of critical infrastructure is narrower than the federal definition in that the City's definition applies only to government facilities with a history of prior disturbances (such as schools, courthouses) or that provide life-saving services (such as police stations, fire stations, and hospitals). (*Id.* at 21–22.)

As this Court has repeatedly stated, the City's interest in clearing encampments during extreme heat is far outweighed by Plaintiffs' interest in the health and welfare of unhoused individuals. (ECF No. 39 at 5.) However, in recognition that the existing TRO is broad, the Court ordered the parties to file a joint statement regarding possible ways to narrow the scope of any future injunctions to best balance the competing interests at play. (*Id.* at 6.) As an example, the Court asked the parties to prioritize exceptions for critical infrastructure. (*Id.*)

The parties filed their joint statement on August 9, 2023. (ECF No. 47.) Although the parties still disagree in many respects, they were able to present several points of agreement. Based on the parties' representations, the Court will modify the existing injunction to better balance the equities and serve the public interest.

**IV.    CONCLUSION**

For these reasons, the Court hereby MODIFIES and EXTENDS the injunction as follows:

1. The City and all of its officers, agents, servants, employees, attorneys, and all persons under its direction and control, are enjoined from clearing encampments belonging to the unhoused, subject to the following exceptions:

    a. Camp management, such as trash and debris clean-up, is permitted within the following parameters: (1) items of personal/survival necessity belonging to unhoused individuals cannot be cleared; and (2) the City may clear and manage debris, vector, and safety issues of encampments. These parameters should be interpreted narrowly.

    b. Enforcement of the City's sidewalk ordinance (Sacramento City Code 12.24) is permitted for all sidewalk obstructions blocking access leaving less than four (4) feet of width. To the extent possible, unhoused individuals should be given an opportunity to comply with the sidewalk

ordinance at their given location.

    c.    The City shall allow a representative from the Sacramento Homeless Union, City staff, and other attendees as agreed to and approved by both parties to tour Miller Park and its facilities.  The frequency, length, and scope of access must be reasonable.  The parties agree to continue their ongoing discussions regarding access to the Miller Park location.  The City has agreed to provide structures (e.g., pop-ups) over tents in areas with little to no shade, and alternative tents, such as those made of canvas or other materials that may provide more or better protection from the heat.

    d.    The City is permitted to enforce its critical infrastructure ordinance only as to encampments within 500 feet of a school, as the City requested this specific exception and Plaintiffs did not explicitly oppose the exception in their reply.  The parties did not prioritize or agree to other exceptions for critical infrastructure, and the Court declines to carve out further exceptions at this time.

The Court takes judicial notice of National Weather Service data, which state that the monthly highest maximum temperatures for the Sacramento area have historically occurred during the months of June, July, August, and September.  Fed. R. Evid. 201(c)(1); *National Weather Service*, *Climate*, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, available at https://www.weather.gov/wrh/Climate?wfo=sto (last visited Aug. 16, 2023).  Similar to last year's injunction, the injunction shall remain in effect through August 31, 2023.  After the expiration of the injunction, Plaintiffs may once again seek to reinstate the injunction by filing a motion with this Court making a showing on all of the *Winter* prongs and providing greater detail about the weather forecast for the remainder of the summer months.

    IT IS SO ORDERED.

Date:  August 16, 2023

_____
Troy L. Nunley
United States District Judge